(February 17, 1987)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRED JONES, Appellant.—Judgment of the Supreme Court, New York County (James J. Leff, J.), rendered July 9, 1982, convicting defendant after a jury trial of attempted burglary in the third degree and sentencing him to an indeterminate term of imprisonment of from 1 to 4 years, is unanimously reversed, on the law, the motion to suppress is granted, and the matter is remanded for further proceedings.

The single issue presented on this appeal arises from the denial of defendant's motion to suppress the contents of a brown satchel in which were found five screwdrivers, a tire iron, a large blue zip-out type bag, and a homemade metal device. Precisely the same issue was raised by the codefendant Cox in his separate appeal. That appeal resulted in a reversal of Cox's conviction by the Court of Appeals, which held that the motion to suppress should have been granted. (See, People v Cox, 61 NY2d 1020, revg 96 AD2d 1151.)

For reasons that will be developed later, we find that the determination of the Court of appeals is dispositive of the issue raised in this appeal, and mandates reversal of this defendant's conviction as well.

At approximately 8:00 P.M. on February 13, 1981, Police Officers Kuerner and McDonald (two probationary police officers) and Detective Handy heard two radio broadcasts concerning a burglary in progress at 18 East 50th Street in Manhattan. The first broadcast described the burglars as two black males wearing ski jackets and carrying a brown satchel, who were headed east on 50th Street. The second broadcast added that the men were in their early twenties, that the ski jackets were probably turquoise in color, and that one suspect was carrying a crowbar.

Fifteen minutes later, while driving south on Lexington Avenue at the corner of 47th Street, Officer Kuerner noticed two black men, one of them carrying a brown satchel, walking east on 47th Street. The officers circled the block, parked their car on 47th Street between Third and Lexington Avenues, and got out. Detective Handy and Officer Kuerner headed toward Lexington Avenue, while Officer McDonald walked toward Third Avenue. Turning back toward the police car, Officer McDonald saw the defendant and Cox coming out of a small driveway. The two men wore ski jackets, one of which McDonald recalled as purple.

Officer McDonald ordered Cox and the defendant to stop. Cox dropped his brown satchel, which made a "metallic-like noise" as it hit the ground. Cox took a step toward Officer McDonald, while defendant walked a step or two in the other direction. Drawing his revolver, Officer McDonald repeated his order to stop. The two men did so, and put their hands in the air.

Detective Handy and Officer Kuerner arrived at the scene with their revolvers drawn. A search of the defendant and Cox disclosed a knife in Cox's pocket. The brown satchel was opened, disclosing the contents described above. The defendants stated that they were coming home from work.

At some point, not clearly specified in the record, the defendant and Cox were handcuffed. Eventually they were driven to the scene of the burglary, where they were identified by two witnesses who had observed the original events.

In denying the motion to suppress the contents of the brown satchel, the hearing court found that the two men had been properly stopped pursuant to CPL 140.50, as persons whom

the officers reasonably suspected of being the subjects of the radio communication in regard to a burglary in progress, and from whom the officers had a right to demand an explanation of their conduct. The court further found that the officers had a right to protect themselves against physical injury, which they did by drawing their guns, and went on to say that the officers "had the right to take into their possession any other property which they reasonably believed to constitute the commission of a crime and to keep it until the completion of questioning", which he determined was not completed until the defendants were arrested after their later identification.

In its brief opinion reversing the conviction of the defendant's codefendant Earl Cox, the Court of Appeals said (61 NY2d, at 1021): "In the absence of factual findings by the trial court and the Appellate Division that the officers had probable cause to arrest defendant, we cannot say that the search of his duffel bag was lawful. (See *People v Gokey,* 60 NY2d 309; *People v Smith,* 59 NY2d 454; cf. *People v Harrison,* 57 NY2d 470.)"

Whatever else may or may not be implicit in the wording of the Court of Appeals opinion, and the citation of two cases involving the search of closed bags incident to an arrest, one of which upheld the search *(People v Smith, supra)* and the other of which found the search invalid *(People v Gokey, supra)*, the opinion is explicit that the search of the brown satchel may not be sustained in the absence of a finding that there was probable cause to arrest the defendants.

Considering the record in the light of the Court of Appeals opinion, it becomes apparent that the hearing Judge, without explicitly addressing the search of the bag, denied the motion to suppress on the ground that the police had a right to preserve what they reasonably believed to constitute the proceeds of the crime until the completion of the questioning, and that the questioning was not completed until after the subsequent arrest of the defendant at the scene of the burglary. However, CPL 140.50 (3) does not authorize a search incident to a detentive stop for such a purpose. The subdivision provides that a police officer, who reasonably suspects that he is in danger of physical injury, may search "for a deadly weapon or any instrument * * * readily capable of causing serious physical injury".

Neither the testimony of the officers nor the surrounding circumstances supports a finding that the bag was searched because the officers suspected that they were in danger of

physical injury, and the hearing court appropriately made no such finding.

The decision of the Court of Appeals in the *Cox* case clearly mandates reversal of the defendant's conviction unless this court finds from an examination of the record that there existed probable cause to arrest the defendant and Cox at the time the bag was opened. Although the totality of the circumstances may arguably have supported a determination by the hearing court that there was probable cause to arrest the defendant and Cox at the time the police encountered them on 47th Street, we are not persuaded that the circumstances so clearly supported such a conclusion as to justify this court in making a finding that was not made by the hearing court, and that was implicitly rejected by the hearing court in its carefully considered opinion.

It is reasonable to surmise that the hearing court's determination that what occurred on 47th Street was a detentive stop pursuant to CPL 140.50, and not an arrest based on probable cause, was influenced by the clear testimony of the police officers that they themselves did not consider the defendants to be under arrest until after they were identified at the scene of the attempted burglary. Although the understanding of the police officers involved would not be dispositive in a case in which evidence of probable cause to arrest was clear, their belief is clearly entitled to the consideration that was apparently given to it by the hearing court in its findings under the circumstances disclosed.

Accordingly, we perceive no sufficient reason to depart from the hearing court's carefully considered determination that the defendants were stopped on the basis of a reasonable suspicion that they were the subjects of the radio communication concerning a burglary, nor to make a finding of probable cause that the hearing court clearly, if implicitly, declined to make. Concur—Murphy, P. J., Sandler, Sullivan, Asch and Lynch, JJ.